LANDRY, Judge.
Daisy G. Jones, Administratrix of the intestate succession of her deceased spouse in community, Perkins D. Jones, (Administra-trix), prosecutes this appeal from the judgment of the trial court terminating her administration of said succession prior to its completion.
We find that in so ordering our brother below acted prematurely and exceeded the discretion vested in him by law.
The specification of errors filed herein on behalf of appellant in substance alleges mistakes on the part of our colleague in the trial court in two basic respects which may be stated as follows: (1) The summary ending of appellant’s administration of the estate and rendition of judgment placing the heirs (including a minor for whom no tutor was qualified) in possession of decedent’s estate notwithstanding administratrix was still in the process of liquidating the estate and had not yet filed a final account of her stewardship, and (2) Declaring that improvements constructed on certain separate property of appellant (admittedly with community funds) belonged to the community between decedent and appellant instead of holding that the community thereby became creditor of administratrix’s separate estate to the extent of the enhanced value of the separate property resulting therefrom.
Decedent, Perkins G. Jones, departed this life intestate on February 25, 1963, survived by Administratrix, his widow in community; Ada Jones Herbert and Leonard Jones, major issue of a prior marriage; and Ramona Lee Snerlin Jones, a minor adopted by decedent and Administratrix during their marriage.
The record is replete with evidence that from the outset the attempted administration of decedent’s estate has been beset with strife, dissension and dispute between the aforesaid major heirs on the one hand and the Administratrix, individually and as surviving parent of the minor, Ramona Jones, on the other.
The parties to this litigation have apparently never voluntarily agreed to any circumstance concerning decedent’s affairs. Even appellant’s qualification as Adminis-tratrix is questioned by counsel for appel-lees in the brief filed before this court. However, said major heirs have neither appealed nor answered appellant’s appeal, consequently the validity of appellant’s qualification as Administratrix is not before us.
*354 Appellant annexed to her petition for letters of administration a sworn descriptive and itemized list of all property purportedly belonging to decedent’s estate. Included therein is an enumeration of certain debts allegedly attributable to decedent’s separate estate. Said enumeration shows what appears to be a list of the expenses incident to decedent’s last illness and funeral. Also contained-in the itemization of debts is a listing of five alleged community obligations reputedly due a bank, two finance companies and a well known chain mercantile establishment. The total of all decedent’s obligations (both those of his separate estate and decedent’s one-half of community debts) is shown to be $3,671.80. The inventory further recites that of the obligations listed as chargeable to decedent’s estate, appellant paid several aggregating the sum of $459.38.
On May 8, 1963, appellant petitioned for and obtained an order directing the sale on June 19, 1963, of all property shown on the aforementioned descriptive list or inventory, to pay the debts of decedent’s succession. Meanwhile, however, on May 29, 1963, the aforementioned major heirs obtained issuance of a rule nisi ordering appellant to show cause why the inventory previously filed should not be amended and revised to include certain items of property allegedly omitted therefrom and describe more fully certain other items listed.
Notwithstanding issuance of the foregoing rule, appellant proceeded with the sale as scheduled despite tender on the date of said sale of the sum of $3,000.00 by the major heirs to pay their share of the succession obligations. At the suggestion of appellant, the Sheriff sold only an undivided half interest in the property although the advertisement called for the sale of all property described in the inventory. The major heirs purchased under protest an undivided half interest in some of the property, which judicial sale was eventually annulled and set aside by the trial court.
Under date of July 3, 1963, the major heirs filed a petition in the trial court alleging in substance that they and the minor, Ramona Jones, were the sole heirs at law of decedent. They also averred there was no necessity for an administration. They prayed that the administration be ended and they and the minor, Ramona Jones, be recognized as decedent’s heirs and sent into possession of decedent’s estate, the minor with benefit of inventory. To their petition the major heirs appended a sworn itemized and descriptive list of property allegedly belonging to decedent’s estate. Needless to say, this list conflicts with the inventory filed as part of appellant’s petition for administration in that it lists as community property certain assets claimed by Administratrix as her separate and para-phernal property.
Also under date of July 3, 1963, the two major heirs filed an affidavit in these proceedings accepting unconditionally the estate of decedent. Said affidavit further recites that said parties have either paid or agree to pay any and all debts of the succession and indicates their readiness and willingness to post bond to insure payment of all succession debts.
The foregoing circumstances were followed by a series of maneuvers on the part of the respective litigants which, for all practical purposes, may be summarized as follows: Appellant again attempted to provoke a sale of the succession property to pay debts. Appellees countered with a rule ordering appellant to show cause why she should not be ordered to renounce or accept decedent’s estate. On application of the major heirs the trial court enjoined ap. pellant and the Sheriff from further administration of the succession and prohibited any sale of succession effects. On December 27, 1963, the Administratrix filed an amended and supplemental inventory or itemized descriptive list of decedent’s property, with the approbation of the trial court. On January 10, 1964, the major heirs moved to strike all pleadings filed by the Admin-istratrix and again asserted their right to be *355 recognized as heirs and placed in possession without further administration of the estate. Also on January 10, 1964, appellant filed a second amended and supplemental inventory of decedent’s estate listing both assets and liabilities. It does not appear that judicial approval of this amended inventory was obtained.
In the meanwhile, however, on July 12, 1963, appellant filed a petition listing debts owed by decedent’s succession to: Sears Roebuck in the sum of $139.55; United Credit Plan in the amount of $601.03; American Bank & Trust Co. in the aggregate of $115.28; and Fidelity National Bank in the sum of $185.31. Administra-trix further alleged the aforesaid creditors were privileged obligees who were pressing for payment and that the succession was without funds to meet these demands. She prayed for and obtained an order from the trial court permitting and directing payment of said obligations out of her separate and paraphernal funds and further ordering that appellant be recognized as a creditor of the succession to the extent of one-half the obligations so paid. On July 29, 1963, appellant petitioned the court for authority to pay the sum of $135.26 due by decedent’s estate to General Electric Credit Corporation which represented a community obligation. She further recited there were no succession funds available to pay decedent’s one-half thereof. She prayed for and obtained authority of the court to pay the indebtedness with her separate funds. The order so decreeing also recognized appellant as a creditor of decedent’s estate in the amount of one-half the sum so paid.
In addition to the hereinabove enumerated obligations of decedent paid by appellant with express approval of the trial court, the record leaves little doubt but that appellant has paid with her separate funds other debts properly chargeable either to decedent’s separate or community estate.
Upon trial of appellees’ motion of May 29, 1963, the primary purpose of which was to terminate the administration, the lower court rendered judgment disposing of numerous issues raised by the pleadings. The judgment, inter alia, placed the two major heirs and the minor in possession of decedent’s estate in proportion of an undivided one-third interest each, the interest of the minor being decreed subject to the usufruct thereon in favor of appellant. It further recognized appellant’s ownership of an undivided half-interest in all property belonging to the community of acquets and gains which existed between decedent and appellant.
As herein previously noted, the major heirs neither appealed nor answered the appeal of Administratrix. As a result our discussion is limited solely to those issues complained of in appellant’s specification of error.
In ordering the administration ended, our colleague on the trial court placed considerable reliance upon the unconditional acceptance of decedent’s estate by the major heirs. Additionally, he concluded that, in view of the tender by the major heirs of a sum deemed sufficient to defray all succession debts, further administration was unnecessary and would only entail a needless expenditure of time and succession assets.
In both brief and oral argument before this court, counsel for appellant contends the trial court erred in terminating the administration before its conclusion because (1) one of the heirs is a minor whose share of the succession obligations amounts to a considerable sum, and (2) the Admin-istratrix herself has become a creditor of the estate having expended and advanced her separate funds to pay debts of the decedent.
On the other hand, appellees argue here (as they did in the court below) that there is no further need for administration inasmuch as they have unconditionally accepted *356 the succession and have unreservedly agreed to pay any and all indebtedness owed by decedent’s estate.
In ordering termination of the administration in question, the trial court apparently relied upon the provisions of LSA-C.C.P. Article 3362 which reads as follows:
At any time prior to the homologation of the final tableau of distribution, the r%heirs of an intestate whose succession is under administration may be sent into possession of all or part of the property of the succession upon filing a petition for possession as provided in Articles 3001 through 3008, except that the proceeding shall be contradictory with the administrator. Upon the filing of such a petition, the court shall order the administrator to show cause why the heirs should not be sent into possession. If the heirs are sent into possession of a part of the property, the administrator shall continue to administer the remainder.”
Since the cited article makes specific reference to LSA-C.C.P. Articles 3001 through 3008, the latter provisions are laws in pari materia and must be considered in conjunction with LSA-C.C.P. Article 3362.
Of peculiar application to the issue under consideration are the provisions of LSA-C.C.P. Article 3004 which states:
“The heirs of an intestate may be recognized by the court, and sent into possession of his property without an administration of his succession when none of the creditors of the succession has demanded its administration, on the ex parte petition of:
(1) Those of the heirs who are competent, if all of these accept the succession unconditionally;
(2) The legal representative of the incompetent heirs, if all of the heirs are incompetent and a legal representative has been appointed therefor; or
(3)The surviving spouse in community of the deceased, if all of the heirs are incompetent and no legal representative has been appointed for some or all of them.
In such cases, the surviving spouse in community of the deceased may be recognized by the court as entitled to the possession of the community property, as provided in Article 3001. As amended Acts 1961, No. 23, § 1.”
Appellees contend in effect that since they constitute all of the major (competent) heirs of decedent therefore, pursuant to paragraph (1) of Article 3004, supra, (construed in connection with Article 3362, supra) the administration may be ended prior to its completion inasmuch as all competent heirs have unconditionally accepted decedent’s succession.
While we are in agreement with counsel for appellees that the cited codal provisions authorize termination of an administration upon the petition of all competent heirs accepting unconditionally, we note also that we are herein concerned with a minor unrepresented in these proceedings.
Ramona Lee Snerlin Jones, the legally adopted child of decedent, was thirteen years of age at the time of decedent’s demise. Accordingly, she was incapable of accepting her said father’s succession unconditionally. It is settled law that acceptance of a succession on behalf of a minor may be made only with benefit of inventory. LSA-C.C. Articles 977 and 1054; Watts v. Frazer, 5 La. 383; Fontelieu v. Fontelieu, 116 La. 866, 41 So. 120. It follows, therefore, that in any application of the terms of LSA-C.C.P. Article 3004, acceptance of an estate on behalf of a minor (incompetent) must be with benefit of inventory.
It has long been the established jurisprudence of this state that following dissolution of a marriage (either by death or divorce), a tutor is required to represent the minor children of the marriage in all *357 judicial proceedings affecting their interests.
Also germane to the subject matter are the provisions of LSA-C.C. Articles 352 and 356 as well as LSA-C.C.P. Article 4061 which, respectively, read as follows:
“Art. 352. It shall not be necessary for minor heirs to make any formal acceptance of a succession that may fall to them but such acceptance shall be considered as made for them with benefit of inventory by operation of law, and shall in all respects have the force and effect of a formal acceptance.”
“'Art. 356. The tutor is bound to render an annual account of his administration, reckoning from the day of his appointment. This account shall be rendered contradictorily with the under-tutor.”
Article 4061:
“Before a natural tutor enters upon the performance of his official duties, he must take an oath to discharge faithfully the duties of his office, cause an inventory to be taken, and cause a legal mortgage in favor of the minor to be inscribed, or furnish security, in the manner provided by law.”
Clearly the foregoing articles require that before a tutor may undertake to handle the affairs of a minor he must qualify as such by taking the required oath. He must then cause the necessary inventory to be taken and thereafter inscribe the prescribed legal mortgage or furnish the security otherwise demanded by law.
Moreover, it is settled law that a parent who represents his minor’s interest in a judicial proceeding must be afforded a reasonable time and opportunity in which to qualify as tutor. McVay v. New Orleans Public Service, Inc., 148 So. 67 (La.App.1933); Wheeler v. Rodriguez, 13 La.App. 97, 126 So. 715 (1930); cf. Creagh v. New Orleans Ry. & Light Co., 128 La. 305, 54 So. 828 (1911); Caruthers v. United States Safety Deposit & Savings Bank, 8 Orleans App. 93 (1910).
Conceding it may be argued with some degree of logic that LSA-C.C.P. Article 3004(1) contemplates dispensing with the necessity of appointing a tutor for a minor in those instances falling within its scope, we find it unnecessary to determine said issue to dispose of the case before us. It suffices that for the reasons hereinafter set forth, we find that this matter falls within the general rule that a minor must be represented by a tutor in any proceeding affecting his interest. We conclude that before any further proceedings be had herein in the trial court, the minor, Ramona Lee Snerlin Jones, be provided with a tutor as required by law.
The present case is not within the purview of LSA-C.C.P. Article 3004 because the first paragraph of said codal provision plainly requires the unanimous consent of creditors as an indispensable prerequisite to its application.
In the case at bar the Administratrix has unquestionably become a creditor of the decedent’s estate by virtue of her payment, with the consent and approval of the trial court, of certain debts owed by decedent. Further, it appears that in addition to payment of the debts shown, Administratrix is contending the estate is indebted to her for still other advances and payments.
Under the circumstances obtaining herein, the agreement or tender of the major heirs to pay the debts of the succession is a matter of no moment. The statute upon which the major heirs rely does not authorize the court to dispense with administration upon the agreement of the major heirs to pay the debts. It provides instead that such dispensation may be ordered only when no creditor of the estate demands an administration. The necessary condition does not exist in the case at bar.
Our examination of the descriptive lists filed herein leads to the inevitable *358 conclusion that, in addition to the debts owed the Administratrix, there remain outstanding and unpaid many other debts owed by decedent’s estate and these may assume considerable proportions. While the trial court found the estate was solvent, we do not necessarily share this opinion. As we view the record, decedent’s estate could perhaps prove insolvent. This fact alone, in our judgment, necessitates continuance of the administration of this succession.
It is worthy of further note that whereas LSA-C.C.P. Article 3001 (which deals with a succession involving competent heirs only) is mandatory in its terms, Article 3004, the provisions of which include incompetents, is merely permissive in its application. Clearly, therefore, the trial court must exercise discretion in the application of Article 3004 in a case properly falling within the scope of said codal authority. Assuming, arguendo, Article 3004 were applicable to the case at bar because all creditors consented to dispense with the administration, this would not, under the circumstances shown, justify termination of the administration of decedent’s estate prior to completion.
From the very beginning, every aspect of decedent’s affairs has been a matter of bitter controversy between the interests of the major issue of the first marriage and the surviving widow and child of decedent’s second marriage. While handling such matters may understandably be distasteful to the courts, the existence of such circumstance virtually demands an administration supervised by an impartial umpire to insure that decedent’s intestate estate be distributed in accordance with law. This is especially true considering the rights of a minor are involved therein. We conclude, therefore, the trial court improperly terminated the administration of decedent’s succession and his judgment so decreeing and placing the heirs in possession must be set aside and recalled.
We consider now the contention of appellant that the court below incorrectly held improvements constructed on the separate property of appellant belonged to the community which existed between decedent and Administratrix.
For purposes of this discussion the property in question may be described as the northwest corner of Lot 78, North Baton Rouge Subdivision. The trial court found that said property was the separate property of appellant purchased prior to her marriage to decedent. In addition the lower court held community funds in the amount of $7,893.00 was expended in the improvement of said property enhancing its value in said amount. Appellant concedes the correctness of the aforesaid enhanced value. The trial court, held, however, said improvements should be included in the inventory as community property. The judgment of possession rendered below recognized the heirs as owners of and placed them in possession of one-half of said improvements.
Appellant and appellees quite correctly agree the aforesaid decision of the lower court does not accord with the law on the subject matter.
LSA-C.C. Article 2408 provides:
“Art. 2408. When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade.”
In the Succession of Singer, 208 La. 463, 23 So.2d 184, the Supreme Court interpreted Article 2408, supra, as follows: “The law is well settled that improvements erected dur *359 ing marriage on the separate property of one of the spouses, even though made with community funds, belong to the owner of the soil, subject only to the duty of paying to the community at its dissolution the enhanced value of the property resulting therefrom.”
The inventory should therefore show appellant to be owner of the improvements in question subject to the obligation of reimbursing the community one-half the sum of $7,893.00.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court terminating administration of the estate of decedent, Perkins D. Jones, and sending the heirs in possession thereof be and the same is hereby annulled, reversed and set aside and the administration of said decedent’s estate be continued to conclusion.
It is further ordered, adjudged and decreed that the judgment of the trial court declaring those improvements made to the separate property of appellant Daisy G. Jones described as the northwest corner of Lot 78, North Baton Rouge Subdivision, with funds belonging to the community which existed between decedent and appellant herein, constitute property of said community, be and the same is hereby annulled, reversed and set aside and judgment rendered herein decreeing said improvements to be the separate property of Daisy G. Jones and further decreeing the separate estate of said Daisy G. Jones indebted to the community in the sum of $3,946.50.
It is further ordered, adjudged and decreed that this matter be remanded to the trial court for further proceedings not inconsistent herewith, the assessment of costs to await final judgment herein.
It is further ordered, adjudged and decreed that all costs incurred in these proceedings from the filing of the petition of Ada Jones Herbert and Leonard Jones to terminate the administration of decedent’s estate, to the taking of and including the costs of this appeal, shall be and the same are assessed to said Ada Jones Herbert and Leonard Jones; assessment of all other costs heretofore or hereafter incurred herein to await further proceedings in the trial court.
Reversed and remanded.